Take up U.S. v. Ezell. Morning, Your Honors. Carl Gunn. I represent Mr. Ezell. I'm going to try to reserve two minutes for rebuttal, and I'll do my best to keep track of my time. I'm going to start with a breach of plea agreement issue. First, there was a plain breach here, especially when you remember two principles, that plea agreements are strictly construed in favor of the defendant, and the government has to strictly comply with them. The government said in its sentencing memorandum at the sentencing hearing that the statutory maximum for the supervised release violation was five years. It said in the plea agreement that it was two years. Counsel, let me ask you this. Why would we, as a court of appeal, make this determination? Why wouldn't a district judge hold an evidentiary hearing to address the issues of whether there was a breach of the plea agreement? Well, two reasons. First of all, Your Honor, it's well established that this Court can consider it as plain error. I know we can. And second, it's plain here. I mean, you have a plea agreement that says one thing, and you have expressed statements in both the sentencing memorandum and the transcript that say something different. So I don't really think, I mean, it's not like there's, you've got a contradiction right there. So I think it's plain on the face of the record. The government tries to fall back on this idea of a duty of candor to the Court, and I did want to address that. There's three reasons that doesn't fly, Your Honors. First of all, we're not talking about a clear factual error or mistake here. We're talking about a legal question on which, in fact, I give it to you, there's at least a plausible legal argument that it was, in fact, two years. Third, there's a difference between being honest with the Court when the Court asks you a question and just not saying anything. It's one thing to say, yeah, Your Honor, it's really, there were really three pounds of drugs, not two. It's another thing to say, to just volunteer that when the judge doesn't even ask. And third, Your Honor, and I think this is the most damning of all, the government says, well, it has an obligation to give the Court correct information. Well, it admits that the information it gave here was not correct. It told the Court five years, and now it says it's three years. So maybe they're allowed to correct a mistake, but they're not allowed to correct it with another mistake. So, Your Honor, there's a plain breach here. I don't think there's any question that it affects substantial rights. The test there is whether there's a reasonable probability it might have been a different sentence. What would a district judge have done? Instead of two five-year recommendations, he would have had a five-year recommendation from the probation office, but five years in one place and three years in another, and a two- or three-year recommendation from the government. I think there's definitely a reasonable probability that a district judge would have given a different sentence. I will move on to the relevant conduct issue, because that's a second issue. First of all, if you have a breach of the plea agreement, there's no appeal waiver that applies. Mr. Gunn, can I just ask you, do we need to reach the breach of the plea agreement if we were to decide that the district court erred in imposing the 51-month sentence? I think you would, Your Honor, because the breach of the plea agreement has the additional remedy of reassignment to a different district judge on remand. It also invalidates the appeal waiver, so I think it matters for those two reasons. This case had a long procedural history, so why wouldn't the judge who is most familiar with this case be in the best position to correct any errors that you are identifying with regard to his sentence on the VOSR? Well, because, Your Honor, if there's a breach of the plea agreement, that judge has basically been tainted. It's well-established in the Ninth Circuit case law that if there's a breach of a plea agreement, it goes back to a different judge. And the reason is one of the cases do you cite for that proposition? Well, I cite, I think it's Franco Lopez in my brief, Your Honor. But that was one where, in my review, it's very different factually. It's very unusual to assign a case to a new judge. Not when there's a breach of a plea agreement, Your Honor. There's probably two dozen cases out there. Most recently, actually, an opinion by Judge Wardlaw for Rios Contreras. I believe there was a breach found. There was reassignment. I think virtually every breach case I cite. The government in that case conceded that if there was a breach of the plea agreement, it should be a remedy. The government in that case conceded that. They said if there's a breach, then it goes to another judge. But I'm not sure that's the case in every case. You're thinking of Heredia? I've read Heredia. I didn't look at it specifically for that issue. That's another plain error breach of the plea agreement case. I think it was reassigned in that case as well, though I don't have it in front of me, Your Honor. I don't remember either. In this case, Your Honor, I don't think the government's contesting that there has to be reassignment if there was a breach. See, I'm not sure there was a breach in this case. It seems to me that there was a lot of mistakes made in this case about what the appropriate sentencing revocation term applied, but it didn't seem to me to rise to the level of a breach. Well, Your Honor, even an honest mistake is a breach. I'd cite the court to the Alcala-Sanchez case that I cite in my brief for another proposition. If you look at that case, there's a paragraph in there where they say, well, gee, this may have been an honest mistake. It may have been that one government counsel didn't realize what the other one had agreed to, but it's still a breach. But here you have the government conceding that the district court imposed an improper sentence. I just don't see that their conduct has been – they're giving it to you. They're saying, yeah, we all got this wrong. Well, they're not giving me the two-year statutory maximum. They're giving me a three-year statutory maximum. So it sounds like they're going to probably breach when it goes back to the district court again, frankly. Is there – I mean, I don't know what they're giving you or not giving you, but you said you have a legal argument about what the correct statutory maximum is in this case. Correct. But the government agreed to – they didn't agree to a specific legal argument, but they agreed that it was a two-year maximum. And so I think they're bound by that. But if they're wrong in the law, then it says – and I'm not saying they are, but the district court has an obligation to make – to do what's correct under the law. Correct. So regardless of what is in the plea agreement or not. That's correct, Your Honor. But where there's two debatable legal arguments, even when one of them is extremely weak, if the government in plea agreement basically agrees that it's going to recommend something that's consistent with a weak or legal argument, they're bound to stand by that recommendation. That doesn't mean the district court couldn't decide it was three years or five years. I don't think at this point there's any way it's going to decide five years. But the government – I mean, this is one of those – sometimes, especially with legal issues like this one, there's two viable legal arguments. But didn't the government stand by the plea agreement and only recommend the two years of the hearing? It stood by that part of the plea agreement. It did not stand by the two-year maximum. And that ended up being very damaging to Mr. Rizzo because he got the 51 months that the probation office recommended. If the government had told the judge, I don't think you're allowed to give 51 months, it's a max of two years, I think there's far more than a reasonable probability that the judge would have just given the two years. I think most district judges, frankly, faced with probation saying one thing and the government and the defense saying the other, there's at least a very strong chance they'd go with what the defense and the government recommended. I guess I have another question for you before your time. So shouldn't we, if we're going to reverse, shouldn't we reverse and remand the sentences for both the supervised release violation and the new felon in possession conviction? You vacate the substantive sentences? Well, yes, that's correct. The government has argued they're part of a sentencing package. I frankly think that could be argued both ways, but we agree to that we want both sentences reopened. But the breach question is still important because that affects whether it goes back to a different district judge or the same district judge. And I really do think, Your Honor, except for maybe one case 20 or 30 years ago, I don't think there's a single case out there where a breach of plea agreement was found and it wasn't reassigned to a different district judge. That's the standard practice. Perhaps in a case where the defendant didn't want that, but in any case where the defendant was requesting that, I think every case out there, that's the standard practice. I was going to save a little bit of time for rebuttal. Go ahead and reserve your time, whatever you have. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Jonas Lerman for the United States. So, yes, the parties agree that remand for resentencing is appropriate. The parties agree that the remand should apply to both cases. Most of the other issues you don't need to reach, and the district court should reach them. The one issue I think you do need to reach, for the reasons my opponent has mentioned, is the breach claim. So I'll start there. The government did not breach this plea agreement, and certainly not under the plain-error standard that the defense concedes applies. The defense has not cited any case where this court or any other court has found a breach of a plea agreement on facts like we have here. And I'll take the Court through what happened here and then explain why there was no breach and why the defense, in any event, couldn't satisfy the third or fourth elements of plain-error, even if there were a breach. So in the plea agreement, in the new felon in possession case, there is a paragraph in there that refers to the other case, the old supervised release revocation case, and that's paragraph 12. And it said, The government will seek the maximum possible sentence, i.e., 24 months, for any supervised release violations and will seek to have such sentence run consecutively to the sentence the court imposes in this case. Now the defense now reads that paragraph to mean that the government was taking on an obligation to advocate for a particular statutory maximum and make legal arguments about the defendant's 2008 drug conviction and what classification of felony that was. That's not what the plea agreement says. That's not what the parties bargained for. And the defense never suggested this interpretation of the plea agreement below. So what happened next was that before the sentencing and revocation hearing, U.S. Probation comes out with this memorandum where they say the statutory maximum for the supervised release revocation is 60 months, not 24 as the parties had apparently believed. The parties accepted that calculation. Neither one pushed back. Nevertheless, the government wanted to make clear that it was not in fact going to recommend the maximum of 60 months. It was sticking with what it had promised to recommend, which is 24 months. And it was important to make that clear because the pre-sentence report in two different places referred to the government seeking the maximum sentence. And it said the government's going to seek the maximum in revocation. That's at paragraphs 4 and 163 of the PSR. And the PSR didn't say what the government's recommendation was going to be. It just said it'll be the maximum. So the government wanted to make clear to the court it was abiding by what it had promised to recommend in the revocation case. And that's at footnote 6 of our sentencing memo, ER 80. And then again at the sentencing and revocation hearing, the government began that hearing by saying, and this is at ER 19, U.S. Probation indicates that the stat max for the supervised release revocation is 60 months. And then later on at ER 29, and I'll actually quote what the prosecutor said here. She said, the government stands by the recommendations it made in its sentencing memorandum. It is asking this court to impose the high end of the guidelines range, which is to say in the other case, the new case, and 24 months with respect to the supervised release violation. I say 24 months because in negotiations the government indicated to counsel that it was going to ask for the maximum. And when, in clarifying that, the government indicated that it believed that to be 24 months and the government feels bound by that and will recommend that for a total of 111 months. That's the end of the quote. So the government adhered to all its promises in the plea agreement. The defense never suggested anything to the contrary below. And that would have been the time to raise this. The Supreme Court said in Puckett that we have the contemporaneous objection rule, we have the plain error standard to prevent sandbagging, right, to prevent a defendant remaining silent about his objection and raising it only later if the case doesn't turn out as he'd hoped. And that's exactly what we have. So can I just ask you, this sentence says in paragraph 12, defendant also understands that the government will seek the maximum possible sentence. So did you, did the parties believe that the maximum possible sentence at that time was 24 months? I wasn't involved, but my understanding from the record is that, I mean, just from what the prosecutor said at the sentencing and revocation hearing, yes, that is what the parties understood. And at the hearing she argued for the 24 months or she recommended it? She recommended, she explicitly recommended 24 months in the sentencing memo and at the hearing. So in this way the case is very different from Farias Contreras, right? Very different. And I would also note that after the prosecutor reiterated at the revocation and sentencing hearing that the parties and U.S. Probation believed that the, you know, new felon in possession case was 60 months, after that the defense, the defendant still admitted all five supervised release violations. So he was on notice at this point that he could face up to five years in prison for the violations. He didn't put the government to its proof on the pending violations of supervised release. He didn't ask to withdraw his plea in the new felon in possession case. You know, he proceeded to revocation and sentencing. May I ask you, though, didn't the sentencing court discreetly address first the sentencing on the, he addressed them separately, the VOSR charges and also the new offense. So, you know, in terms of your argument that a packaged remand for resentencing makes sense, what, in your mind, would the sentencing court do differently with regard to the underlying indictment, the count one of the indictment? In the new felon in possession case? Yes, the judge really went through a lot of different factors, gave relevant conduct enhancements, and this concept that maybe the judge would want to deal with a holistic sentence. I would imagine with the idea that reaching somewhere near what the original sentence was or have that freedom, why would you think that the judge would just stick with the original sentence on the underlying indictment? Oh, he very well might. He very well might. I mean, the government asked for something more in the new felon in possession case. I believe we asked for 87 months. Yeah, right. But you're right. He engaged in a, you know, thorough 3553A analysis. But this was a package, and, you know, he chose to stack these sentences, not run them concurrently. What evidence is there of a package? I'm just curious from the record why you argue that. Well, that it was one hearing. You know, it was a supervised release revocation and sentencing hearing, and he ran the sentences consecutively instead of running them concurrently. But we don't know. I mean, we don't know. The judge might stick with the same sentence in the new case and reduce the sentence in the supervised release revocation case. But, you know, as the defense concedes, and we cited a case on this point, I believe it was a Judge Tallman decision under sort of analogous circumstances where this court said, you know, the district court on remand should have the, you know, the freedom to take a new look at both sentencing if he chooses to. But, you know, it's entirely possible that he'll impose the same sentence in the new felon in possession case. I did want to briefly touch on, in the two and a half minutes I've got left, oh, so one point about the reassignment to a new judge. Judge Wardlaw, you're right that in Frias-Contreras the government conceded that remand to a new judge would be appropriate in that case. I would note that in the opening brief the defense relied on Franco Lopez for their reassignment argument. In Franco Lopez the defense raised a breach claim in the district court, which we don't have here. But, you know, in any event, there was no breach here, so you don't need to reach the question of whether reassignment to a new judge is appropriate. Just quickly, on the other prongs of plain error review, the defense can't satisfy the third prong because there's no reasonable probability that if the government hadn't said anything about the statutory maximum in the supervised release case the district court would have done anything differently here because the district judge would have been confronted with an unchallenged recommendation from U.S. probation that the stat max was 60 months, and there's no reason to think he wouldn't have accepted that. And then on the fourth prong, this court looks to whether there were countervailing factors, if there was a breach, and here we do have countervailing factors for all the reasons I just talked about. You know, even after hearing about the 60 months, the defendant still chose to admit the five pending violations of supervised release, and the case is distinguishable in lots of ways from a situation like Frias-Contreras, you know, where you had the government making arguments and taking the defense by surprise at the sentencing hearing. We didn't have any of that here. The defendant was fully on notice. I only have a minute left, so I wanted to touch on the other two issues just quickly. There was no colorable argument here that the statutory maximum was, in fact, 24 months, and that's because, as this court has repeatedly said, Mr. Ezell's 2008 drug conviction was under 21 U.S.C. 841b1b. That's clear from the district court's findings of fact after the bench trial. It's clear from this court's published decision in 2015, clear from the judgments. Nobody's ever suggested anything to the contrary until this appeal, you know, 15 years later. And then finally, on the substantive guidelines claim in the new felon in possession case, the appeal waiver does apply because there was no breach. This was a knowing and voluntary plea. But even if it didn't apply, the claim fails on the merits under the Parler decision for all the reasons we laid out in our brief. I only have 10 seconds, but if the court has no other questions, we would ask that you affirm. Thank you. Thank you very much, counsel. Mr. Gunn? To start with the last points, Your Honor, no one said anything until now about which drug statute he was convicted under because it wasn't relevant until now. I give you my colorable argument in the opening brief. The judge found not five grams of cocaine in his findings, but a measurable or detectable amount. At least they're reasonably read that way. On the breach of the plea agreement, Your Honor, the key language in the plea agreement is defendant understands that the government will seek the maximum possible sentence, i.e. 24 months. I think strictly construed in favor of the defendant and against the government and the strict compliance the government's required, that means they're not only supposed to recommend 24 months, but they're supposed to take the position that the statutory maximum is 24 months. You know, there's this argument that the defense didn't say anything. You know, that's not quite right. The defense didn't make a big deal out of that issue because the defense attorney had other fish to fry. He had these strong mitigation arguments that you can read about in the defense sentencing memorandum. He did note for the record, in quotes, that he didn't agree with the Armed Career Criminal Act classification from before, and that's the only thing that made the statutory maximum five years. So I think there frankly was something of an implicit objection to the statutory maximum. That just wasn't the fish he wanted to fry at this sentencing hearing, Your Honor. There's not a case on point here, but we have what are called documents on point that make the airplane. You have a plea agreement that says two years, and you have a sentencing transcript and a sentencing memorandum where the government's saying five years. It can't do that. Would it have made a difference to the district judge? Well, at least a couple of your honors have been district judges. One still is, Your Honor. I think if the government went in there agreeing with the federal statute, with the five-year probation office recommendation, that the judge would have maybe very possibly had some different thoughts. And remember, it's only a reasonable probability standard for plane air. We don't have to show for sure the judge would have done something different. I think I'm past my time. Unless the Court has other questions, I'll submit. Does anyone have questions? All right. Thank you very much, Mr. Gunn. Thank you, Your Honor. U.S. v. Zell will be submitted.
judges: WARDLAW, SMITH, Matsumoto